The next case called, agenda number two, is docket number 1-2-3-5-2-5, People v. Eubanks. If you're ready, Ms. Bendick. May it please the Court, Counsel. My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people. This Court should reverse all three holdings of the divided appellate opinion below. By number one, reversing its facial invalidation of section 11-501.2c2 of the Vehicle Code. Number two, by holding that the trial court properly rejected the proposed reckless homicide jury instruction. And number three, by affirming defendant's conviction for the class 1 felony of failure to report. I'll take the issues in this order, but I'm happy to answer any questions at any time. So to begin with section 11-501.2c2, I'll refer to this provision going forward as the implied consent provision. There are two independent bases for this Court to reverse its facial invalidation. The first is a well-established avoidance principle. This Court, in cases such as People v. Lee, has reaffirmed that courts should not facially invalidate statutes when there are narrower grounds on which to resolve issues. Here the defendant was challenging the police gathering samples of his blood and urine as a DUI suspect for chemical testing. And here before the Court, as the appellate court held, the parties agreed that the police violated his Fourth Amendment rights in gathering these samples. There was no search warrant. He did not consent. There were no documented case-specific exigent circumstances. And the good faith exception does not apply because the police used physical force to gather those samples, contrary to this Court's case of People v. Jones. Given all of those conclusions, that is the basis on which the testing-related evidence should have been suppressed. That's the basis for reversing his aggravated DUI conviction. And so given all of those conclusions, it was unnecessary for the appellate majority to go on to consider the facial validity of the implied consent provision. But even putting that aside, there's a second basis for reversal, and that is on the merits that this provision is not facially unconstitutional. That is a very high burden for a defendant to establish, and it is only if there is no set of circumstances in which a provision can validly operate that it should be facially invalidated. And yet, as I just alluded to, there are three circumstances in which, under Fourth Amendment precedent, these chemical tests can be gathered from DUI suspects. If police get a search warrant, if they obtain valid consent, or if there are case-specific exigent circumstances. And so for the purposes of facial validity, the only question is whether the provision prevents any of these circumstances from operating. But Ms. Benick, in all those situations, are the police really acting pursuant to the statute? Because under the situations that you give, consent, exigent circumstances, and warrants, even in the absence of the statute, the police can validly search when those things are present, right? That's true, but that's where the example from Lucien v. Briley comes into play. That's in the reply brief. Lucien cited the case of People v. Ford. And so in that situation, after Prendy v. New Jersey, there was a facial challenge to some sentencing provisions. And there, this court held that that provision was not facially invalid because the operation of an entirely separate statute could cause a compliance with the Apprendi standard. So it's not a problem if the provision challenged itself does not require the constitutional compliance. The only question is if it prevents constitutional compliance. So you're right, while this provision is silent on whether the police should get a warrant, it doesn't prevent them from getting a warrant. And that's the only question for facial validity purposes. So the purpose of the statute wasn't the fact that they didn't have to get a warrant or didn't have to have exigent circumstances? Well, the provision was drafted before McNeely, and so it reflects old constitutional principles. But I would also say the statute continues to serve a valid purpose, which is it gives warnings to drivers in Illinois that if you're getting a driver's license, in doing so you're agreeing to submit to such testing in two situations, where the police have probable cause to believe you committed a DUI and where there is injuries or death as a result of your accident. It puts them on notice of this implied consent inherent in getting a license. So that's actually the principal purpose of the statute. And so long as it doesn't prevent the police from also complying with the Fourth Amendment, then the provision can, at least under some circumstances, operate validly. Counselor, but doesn't it put the police officer in a very difficult position? If he chooses to not get a warrant, then there's going to be a challenge at all times. Well, not if the person consents or not if they're on suspicion. Well, I'm assuming that they're not consenting to it, and then there's going to be a challenge. Well, yes, but there is still the exigent circumstances case-specific situation. If the police here had documented specific reasons why either the investigation or dealing with the fact that there was a body at the scene, that there were injured persons at the scene, that they tried to get a warrant but a judge was not available, if those had been documented, that would also justify the warrantless nonconsensual testing. And so that's the important point here. There's multiple ways in which this can function. And police should know after McNeely that the first instinct should be try to get the search warrant. I mean, that is what the U.S. Supreme Court says. But then you have to look to another statute at all times. We're just looking at this statute. And what does it provide direction to the police officer? It's silent, but again, the only question for facial validity purposes is whether it prevents constitutional compliance in all circumstances. It's such a high standard, and that is why this Court has cautioned that it causes instability to the legal system if statutes are facially invalidated. That is why it is such a high standard. This statute as written causes difficulty, isn't it? No, it's simply silent. And the police should know from McNeely that they should first start by getting a warrant, but it also should know that they need to warrant the motorist. Their duty in getting a license is to submit to these tests under these situations. That is part of the deal in getting a driver's license and driving in Illinois. Even if we agree with your position on this, would you think that this Court should reach out to the legislature to rewrite this statute to clear some of this up? Sure. That's entirely appropriate, and this Court has done that in other situations. But again, this is a very narrow issue of simply the facial validity. But yes, this Court could certainly signal to the legislature to look at McNeely, to look at current situations. Not only could we, do you think it would be the prudent thing to do? Sure. Yes, I would agree with that. Thank you, Your Honor. And, in fact, my opposing counsel provides some specific suggestions in Rappeley's brief of other states and how they have adjusted their statutes in light of McNeely. But I would like to turn to the second issue. What is the standard of review in this matter? For which issue, I'm sorry? For the first issue? Yes. Well, because it's a question of constitutionality, it's de novo review. But it is still that high standard that defendant has to satisfy. But I would like to move on to the second issue as well, which is the propriety of the trial court's decision to not give the reckless homicide jury instruction. Now, of course, in a recent case from this court, People v. McDonald, this court has explained some relevant principles for this area. That, first, a defendant is entitled to a lesser-included offense jury instruction if there is some evidence that's believed by the jury would support a conviction for the lesser offense. But that, on review, the appellate court or this court reviews the trial court's decision in this area through the deferential abuse of discretion standard. Now, it's important to be entirely clear on the two offenses that we're comparing here. We're looking at first-degree knowing murder, and we're looking at reckless homicide. Both of these offenses involve a person who is acting without the objective of killing someone, but is acting with conscious awareness or knowledge that his conduct is creating a risk of harm. And that's where the difference lies. For first-degree knowing murder, it's a substantial probability of causing death or great bodily harm. And with respect to reckless homicide, it's a likelihood of death or great bodily harm. Now, in McDonald, the case was looking at involuntary manslaughter instead of reckless homicide, but it's important to note that reckless homicide and involuntary manslaughter are nearly identical offenses that are created in the same subsection, and the only difference between them is that reckless homicide involves the driving of a car in causing the death or great bodily harm. And so the trial court here, in deciding to reject this reckless homicide instruction, cited the sum total of the characteristics of the driving, looked at the setting in which this collision occurred, and looked at the injuries inflicted and concluded that it reflected such a degree of dangerousness, this driving in these conditions, that defendant could not have concluded that his conduct was posing merely this lesser degree of risk of harm that's inherent in reckless homicide. Now, that is a well-established rationale in the involuntary manslaughter context. It's been reaffirmed in several cases from the appellate court and this court, including in McDonald itself. And although there aren't any cases in the reckless homicide context that use that same rationale, this court should apply it. And that is because, as I already mentioned, these two offenses, involuntary manslaughter and reckless homicide, are nearly identical. It is only the fact that a car is involved that is the only difference between them. Isn't there still a question, though, that this defendant was the driver? Isn't that an issue? And maybe he should have been remanded instead of the reduction? Well, I mean, he contested it. But given the fact that he fled police and the police followed him and ultimately saw him exit the car and arrested him on the scene, I would say there's not really a credible dispute about that fact. I mean, he certainly was entitled to testify to that and raise that defense. But I wouldn't say that that's actually an ongoing question in the matter because of the way in which he was promptly arrested at the scene and seen leaving the car that caused the accident. So I would point out, though, that a lot of the specific examples that in McDonald and other cases for involuntary manslaughter purposes have flushed out these factors that help determine what is the level of dangerousness of the conduct involved. Because, again, that's the only difference here between first-degree knowing murder and the lesser offense. Help me to understand. We're to apply an abuse of discretion standard. Yes. And we also have said that if there's some evidence, an instruction should be given. Right. Can we look at the case and say there's some evidence while still applying an abuse of discretion standard? My answer to that is no. And I acknowledge that that is the most complicated part of this issue, but I would like to explain why. That is to look at McDonald itself. In McDonald, the defendant pointed to a few facts in the case and said, look at the fact that a few of the stab wounds there were superficial. That sounds like recklessness. Let's look at the fact that the defendant and the victim were of similar size. That sounds like recklessness. But it doesn't make sense to pluck out an isolated piece of evidence and look at it in isolation and say, does that indicate recklessness? And the reason why is because you're trying to quantify what is the dangerousness of the conduct. And it would make no sense to look at only part of it in isolation. So to look at it for this case, it would be like the defendant saying, consider the fact that I ran the stop sign at the intersection of Greenview and Toohey and running a single stop sign, that sounds like recklessness. But that would make no sense because he ran eight stop signs in a row when going around 70 miles per hour with his headlights off in the dark in a residential urban area. So that is why what the court needs to do is look at the totality of the circumstances and consider what is the dangerousness and sort of picture it almost on a spectrum. So as you're going across the spectrum and the level of dangerousness is increasing, at one point along the spectrum you're right squarely in reckless conduct. But as you go farther and farther, increasing the dangerousness, at some point it becomes a jury question. It's a close call whether it's the degree of dangerousness and recklessness or it's the degree of dangerousness in knowing murder. But as you continue further up the spectrum, at some point you cross a threshold where it's no longer tenable to say that the level of dangerousness posed by my behavior is merely reckless. That's essentially what the majority said in McDonald. So it sounds like you're saying that there is some evidence of recklessness, but that dissipates as you get further along the spectrum. Well, right, because since, again, I guess that standard that you cite is there's some evidence of the lesser offense, that applies to any offenses in the criminal code. But since we're looking at the specific example of knowing murder and a lesser offense of recklessness, because the only difference is what is the level of dangerousness posed, it only makes sense to consider the totality of the dangerousness of the conduct. Because otherwise if you just pluck out one piece of information, the fact that he ran this one stop sign, that's entirely misleading because, no, he ran eight stop signs in a row, and it was dark, and he didn't have his headlights on, and he was going 70 miles per hour. So it only makes sense to consider the totality of the circumstances of both the driving as well as the conditions in which it occurred. Ms. Bennett, I'm interested in the first part of the Chief Justice's question, the standard of review. You would say the appellate court found clear evidence of recklessness, right? Well, I guess so, yes. I guess I would have to agree. Okay. But you see the appellate court as doing de novo review, right? Right, yes. Isn't that somewhat of a semantical distinction? I mean, isn't the appellate court also saying that the trial court disregarded evidence of recklessness, therefore they abused their discretion in that disregarding of the evidence? I'm trying to figure out how that is a de novo review, and if the appellate court has the right to do what they did and said, hey, there was evidence of recklessness the trial court didn't look at, we see it in looking at this record. Is that de novo or is it the trial judge abused his discretion in ignoring the evidence? Well, I guess my response to that is the paragraph in McDonald which flushed out the difference between de novo review and abuse of discretion and said, well, if you're talking about de novo review, that is directly looking at whether there is some evidence in the record, which is sort of what you're describing. It can't be that the reviewing court just looks at the evidence and says, this singular piece, this is some evidence of recklessness, and apparently because the trial court ignored it, that was an abuse of discretion. That's collapsing the two into themselves because it's simply the reviewing court itself directly looking for whether there was some evidence. I mean, that's de novo review by definition. So instead, I would say that to correctly apply the abuse of discretion standard of review under McDonald, what this court, the appellate court, needs to do is, again, look at the totality of the circumstances as illustrated in the five factors listed in McDonald that help flush out the dangerousness of the behavior and consider whether the decision that it was so dangerous as to preclude that lesser offense, is that unreasonable or arbitrary? That is the decision then that's given the deference. And that's where the trial court is in a better position to judge the evidence for all those reasons. And back to the second part of the Chief Justice's question. If the one piece of evidence is intoxication, for example, wouldn't that potentially affect and underlie other behaviors like running eight stop signs in a row? Certainly. I would also, again, point to McDonald. McDonald was a case where the defendant said, here's some evidence that I ingested alcohol. I had a few beers with this eyewitness at the trial. I had some wine later. And, by the way, the victim was also intoxicated and on drugs at the time. And yet this court in McDonald and the majority looked at, again, the totality of the circumstances of the behavior and ultimately found a dearth of recklessness, which only makes sense by noting that even if there's slight evidence that someone ingested an intoxicant, that still is not necessarily evidence of intoxication at the key moment. Just because you drank alcohol hours ago does not mean your faculties were impaired at the time of the crime. It does not mean that it affected your understanding of the riskiness of your behavior. So, again, that's why it's a totality of the circumstances approach. It's the only way the McDonald majority makes sense. Am I understanding you correctly that the totality of the circumstances influences the determination of whether there is some evidence of recklessness? Well, it influences the decision of the quantifying of how dangerous is the behavior and that there's a certain point on the spectrum that the behavior is so dangerous that it would not be tenable for the defendant to claim that he merely understood his behavior as posing that lesser degree of risk that's inherent in recklessness. So what does some evidence mean? Well, I mean, that would mean that if you consider this totality, that it's on that spectrum close enough to recklessness that it's a jury question, that it needs to be decided by the fact finder about which side of the line is it on. Because otherwise in McDonald there were specific pieces of evidence cited by the defendant and yet ultimately the trial court appropriately rejected that lesser-included defense. And so that must mean that when you look, because, again, that's where the stop sign example comes in, it doesn't make sense to pluck a single piece of information to understand the level of dangerousness in isolation because running one stop sign is very different than running eight stop signs at 70 miles per hour. Well, why isn't that the prototype of what a jury should decide? In other words, the jury hears this, they hear the testimony, the defendant argues it, and the state makes exactly the argument you're making here today. Right. I mean, I would say that there is a whole range, you know, a subsection of cases that are there on that spectrum where it's a close enough call that, yes, it's a jury question, but that there's some point where the level of dangerousness crosses this threshold where it's no longer tenable for the defendant to claim that he merely had that lesser degree of, or an understanding that his conduct posed that lesser degree of risk. And I know I'm about to run out of time, so just very briefly to turn to the third issue, I'd like to stress the defendant affirmed himself in his brief that he's merely raising a sufficiency challenge to the failure to report conviction, and it's only on a single element of the offense, whether he reported within 30 minutes. And I would like to stress that the state is relying on the fact that later on he, and if I could just complete my thought, if that's okay? You may. Just very briefly, thank you. That because he claimed he was not in the car, he was not at the scene, it was a reasonable inference, especially under the deferential Jackson v. Virginia standard, to infer that he never reported. So for all these reasons, we would ask that this court reverse all of the holdings of the appellate majority, but affirm the reversal of the aggravated DUI conviction. Thank you. Thank you.